UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEORGE W. BROWN,

                Plaintiff,

    -against-

THE BROOKDALE HOSPITAL MEDICAL
CENTER, SANJEEV RAJPAL, M.D.,
CLASS SURGERY BROOKLYN GROUP,
P.C., THE MOUNT SINAI HOSPITAL,
HOWARD CHOI, M.D., DANIELLE
PERRET, M.D., BRIAN RIORDAN, M. D.,
NEW FRANKLIN REHABILITATION &
HEALTH CARE FACILITY, LLC, FRANKLIN
CENTER FOR REHABILITATION &
NURSING, INC., FANKLIN CENTER FOR
REHBILITATION & NURSING, ISRAEL
SHERMAN, WILLIAM DUKE, M.D.,
HILLSIDE MANOR COMPREHENSIVE
CARE CENTER, and THE NEW YORK
HOSPITAL MEDICAL CENTER OF
QUEENS,

                Defendants.
------------------------------------------------------------X

**Case No.: 08 CV 1093 LMM**

**RESPONSE BY
NEW FRANKLIN HEALTH CARE
FACILITY, LLC, FRANKLIN
CENTER FOR REHABILITATION
& NURSING, INC. TO
PLAINTIFF'S FIRST SET
OF INTERROGATORIES**

C O U N S E L O R S:

    Defendants, **NEW FRANKLIN HEALTH CARE FACILITY, LLC, FRANKLIN CENTER FOR REHABILITATION & NURSING, INC.** by their attorneys, **KOPFF, NARDELLI & DOPF LLP**, hereby responds to plaintiff's first set of interrogatories, upon information and belief, as follows:

    **INTERROGATORY NO. 1:**

    Identify by stating the name, address, telephone number, social security number, and period of employment and/or period of contract for all administrative personnel

{A0298979.DOC}

and department heads, or their equivalents, at Defendants' nursing facility for the entire residency of Plaintiff, from December 8, 205, to October 24, 2006, including but not limited to: Administrator, Director of Nursing, Assistant Director of Nursing, Director of Medicine, Director of Mental Hygiene, Dieticians, Social Workers, Activity Directors, and/or Physical Therapists who worked at Defendants' nursing facility during the time of Plaintiff's residency at said facility form December 8, 2005, to October 24, 2006.

### ANSWER:

Israel Sherman (Former Administrator)
72-33 137th Street
Flushing, New York 11367
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

Juliet Chang (Director of Nursing)
8 Stuart Drive
Syosset, New York 11791
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

Gloria Cintron-Palmer (Associate Administrator)
128-28 233rd Street
Laurelton, New York 11422
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

William Duke, M.D. (Medical Director)
212-03 33rd Avenue
Bayside, New York 11361
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

Martha Calle (Chief Clinical Dietitian)
3324 91st Street
Jackson Heights, New York 11372
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

Allison Bellin (Director of Social Services)
500 West 235th Street
Apt. 2C
Riverdale, New York 10463
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

{A0298979.DOC}                                    2

Gloria Golightly (Director of Activities)
44 North Grove Street
Freeport, New York 11520
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

Jennifer Saade (Director of Medical Records)
142-20 Franklin Avenue
Flushing, New York 11335
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

John Saade (Director of Housekeeping)
142-20 Franklin Avenue
Flushing, New York 11355
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

Tomasz Suchowolak (Director of Maintenance)
131 Newton Street
Brooklyn, New York

Dr. Martha Mays (Director of Rehab)
8 Greendale Lane
East Northport, New York 11731
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

Carol Besserman (Director of Food Services)
14-22 Waters Edge Drive
Bayside, New York 11360
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

Philip George (Director of Respiratory Care)
416 Grand Boulevard
Scarsdale, New York 10583
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

Sharon Benderly (Director of Admissions)
2045 East 21st Street
Brooklyn, New York 11229
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

**INTERROGATORY NO. 2:**

Fully identify each person in the chain of command above Administrator at Defendants' nursing facility who directed, supervised, or was in any way responsible for monitoring the performance of said Administrator and/or others in the chain of command during Plaintiff's residency.

{A0298979.DOC}    3

**ANSWER:**

Mr. Bent Philipson
Mr. Ben Landa

**INTERROGATORY NO. 3:**

Identify the members of the medical and nursing staff who rendered care or treatment to Plaintiff for each day during Plaintiff's residency at Defendants' nursing facility, and identify each person who is still employed at the nursing facility.

If you are unable to identify the members of the medical staff or nursing staff who rendered care to Plaintiff, state the reason you are unable to answer.

**ANSWER:**

William Duke, M.D.
Aaron Pinkasov, M.D.
Timothy Segal, M.D.
Margaret Stainao, Ph.D.
Nursing Staff (see attached)

**INTERROGATORY NO. 4:**

With respect to any individual employed as a nurse's aide or physician's assistant at Defendants' nursing facility who rendered care or treatment to Plaintiff, during the period of his residency, fully identify any individual who was not a certified nurse's aide or certified physician's assistant when hired by said facility by providing the below information for each such person:

    a)    the exact date of hire;

    b)    the date the individual was issued a nurse's aide or physician's assistant certificate, if any;

    c)    the identity of the school or institution who issued such certificate to such person(s).

**ANSWER:**

We had no employees who rendered care to Plaintiff that was not certified.

**INTERROGATORY NO. 5:**

Please provide the policies and procedures in effect at Defendants' nursing facility at the time of Plaintiff's residency whereby residents were assessed for the following:

  a)  mental health needs;

  b)  skin integrity and/or wound care;

  c)  physical therapy needs;

  d)  nutritional or dietary needs;

Please also provide copies of any such policies and procedures for the provision of mental health services by mental health professionals to residents at said facility, the provision of skin integrity or wound care treatment, the provision of physical therapy services, and the provision of nutritional need at said facility.

**ANSWER:**

See Attached ("A")

**INTERROGATORY NO. 6:**

Please identify, by providing the names of any Skin Integrity or Wound Care team members of Defendants' nursing facility who rendered care and treatment to Plaintiff including: 1) the dates of each visit, 2) substance of each visit, 3) photographs taken during any visit, 4) the procedures or protocols followed on each visit, 5) any reports generated for each visit, 6) the names of the persons to whom such reports were given, and 7) whether such persons are still employed. If not, please provide the last known name and address of any such person and the position that person held during Plaintiff's residency.

{A0298979.DOC}                                     5

**ANSWER:**

William Duke, M.D. and Yue Jin, R.N. were the Wound Care team. They are both still employed at Franklin Center for Rehabilitation & Nursing.

**INTERROGATORY NO. 7:**

If you claim that Plaintiff was non-compliant with your instructions, then describe the following:

    a)    what specific instruction you gave Plaintiff;

    b)    in what manner was Plaintiff non-compliant;

    c)    how was Plaintiff's compliance assessed;

    d)    what actions did you take to remedy any non-compliance;

    e)    whether you consulted with any mental health professional regarding any such non-compliance.

**ANSWER:**

The Plaintiff's non-compliance is documented in the records of Defendant's facility that have previously been provided.

    a) The Plaintiff was instructed to comply with the medication schedule set forth by the medical staff, to participate in his morning care, to abide by dietary instructions, to cooperate with turning and positioning directions and various other daily and acute care instructions, including but not limited to instructions not to smoke inside the facility or to take any drugs other than those provided by the medical staff. Plaintiff was also verbally abusive to the staff and sexually harassed female staff members.

    b) The Plaintiff's history of non-compliance is documented in the chart maintained by the Defendant's medical staff. The following is meant as an overview, and is not meant to be an all-inclusive summary of the information contained in the previously provided medical chart. As to his **medication**, the record notes the patient was non-compliant on January 11 and 29, 2006; February 17, 18 and 21, 2006; March 2, 8, 11, 12, 13, 14,15, 16, 17, 18, 19, 20, 22, 23, 29 and 30; April 6, 2006; May 23, 2006; June 2, 5 and 30, 2006; July 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30 and 31, 2006; August 1, 2, 7, 12, 17, 19, 26, 28, 28 and 29, 2006; September 18, 21, 22 and 23, 2006; October 9, 10, 12, 1316,17 and 18, 2006. As to his **morning care**, the record

notes that the patient was non-compliant on December 9, 17, 18, and 25, 2005; February 19 and 20, 2006; March 23 and 28, 2006; April 1, 2006; May 6, 7, 8 [twice], 17 and 20 [four times], 2006; July 5, 17 and 23, 2006; September 22 and 23, 2006. As to **turning and positioning** the record notes that the patient was non-compliant on December 17 and 23, 2005; February 14 and 18, 2006; March 13, 2006 [Plaintiff refused wound care.] April 1, 2006; May 3, 6, 7 and 23, 2006; July 7, 2006; August 9 and 12, 2006. As to **smoking in the facility**, the record notes the patient was non-compliant on December 30, 2005; January 4, 24, 25 and 30, 2006; April 7, 9 and 26, 2006; May 18, 2006; June 22, 2006; October 11, 12 and 14 2006. Plaintiff was **verbally abusive** to the staff as documented on December 21, 2005; January 30, 2006; February 10, 2006 [Plaintiff asked staff member whether she wanted to play any more with his penis.]; March 28, 2006; August 1, 15 and 23, 2006; September 18, 2006; As to the taking of **non-prescribed drugs**, there is an entry in the chart for March 29, 2006 indicating that the Plaintiff took unauthorized drugs; there is an entry in the chart for June 8, 2006 indicating the suspicion of the medical staff that Plaintiff was accessing recreational narcotics on his trips out of the facility; As to **various other instances of non-compliance** the record reflects that the Plaintiff refused a catheter on December 9, 2005; that on January 18, 2006 the Plaintiff was taking extra food from his friends, against dietary advice; that the Plaintiff refused to shower on January 29, 2006 and May 5 and 19, 2006; that the Plaintiff was non-compliant with his out-of-bed schedule on February 14, 2006; that the Plaintiff refused to go to Mount Sinai group therapy on March 29, 2006; that on May 17, 2006 Plaintiff fell while trying to get into a taxi cab outside the facility, and that he refused to be taken to an Emergency Room for acute care, and that he refused to wear a cervical collar; that the Plaintiff refused to wear a cervical collar on May 20, 2006; that on May 31, 2006 Plaintiff refused an enema for constipation; that on June 27, 2006 Plaintiff turned off his VAC machine [a device used in the provision of wound care], complaining to the staff that the machine was too noisy and that it was keeping him awake; that on June 29, 2006 Plaintiff was admonished that he was not eating the proper food when he went outside the facility and that this practice was causing an excessive weight gain; that on July 6 and 7, 2006 Plaintiff refused to have his VAC dressing changed and refused to be repositioned; that on July 23, 2006 the Plaintiff refused all wound care; that on July 25, 2006 the Plaintiff turned off his VAC machine; that on July 27, 2006 the Plaintiff was advised that he was eating the wrong kinds of food when outside the facility and that this practice was causing an excessive weight gain; that on July 30, 2006 the Plaintiff purchased and consumed food from a neighborhood deli despite the previous admonitions regarding the practice and his subsequent excessive weight gain; that on August 1, 2006 Plaintiff threw his morning medications to the floor rather than take them as directed; that on August 23, 2006 the Plaintiff refused to go to New York Hospital for an MRI; that on August 25, 2006 the Plaintiff attempted to throw various items at staff members when refusing to be taken to an outside hospital for an MRI; that

on September 22, 2006 Plaintiff again was admonished regarding his practice of obtaining outside food.

c) The Plaintiff's compliance was assessed by the observations of the nursing and medical staff.

d) The Plaintiff was counseled on numerous occasions regarding the issues of his personal safety, non-compliance with medication schedules, smoking in the facility and other and various issues. The Plaintiff was referred for psychiatric assessment and treatment after a an incident on December 14, 2005 when Plaintiff stated he wanted a pair of scissors so he could hurt himself. Plaintiff later told the psychiatrist that it had merely been a bad joke. He was referred for psychiatric/psychological evaluation and counseling throughout the course of his admission to the Defendant's facility. Those records are contained in the medical chart previously provided Plaintiff's counsel. On January 11, 2006 Plaintiff was counseled regarding his non-attendance at psychiatric treatment sessions. On April 7, 2006 Plaintiff was counseled regarding dietary alternatives. On April 12, 2006 Plaintiff was counseled regarding the danger he presented by smoking in his room. [Plaintiff was advised of the danger posed to himself, the other residents and to the staff by his smoking cigarettes on a floor where oxygen was being administered. At that time, Plaintiff advised that he was aware of the risk his behavior posed.] On April 26, 2006 Plaintiff was again counseled regarding his smoking inside the Defendant's facility. On May 19, 2006 it is recorded that Plaintiff's room smelled of smoke and that he was again counseled as to the risk. On June 22, 2006 a lit cigarette was found in a trashcan in Plaintiff's room. He was again counseled as to the danger his behavior presented. According to the record the Plaintiff admitted he had been smoking. On August 9, 2006 the Plaintiff was advised of the importance of his compliance to his out-of-bed and turning schedule.

e) Plaintiff was referred to the staff psychiatrists and psychologist. The frequency with which the Plaintiff attended these sessions and complied with the instructions are contained in the medical chart previously provided.

**INTERROGATORY NO. 8:**

Please identify the name(s) of any mental health professional(s) at Defendants' nursing facility who rendered care or treatment to Plaintiff during his residency. Please state if such mental health professional is still employed.

{A0298979.DOC} 8

**ANSWER:**

Aaron Pinkhasov, M.D., Timothy Segal, M.D. and Margaret Stainao, Ph.D. are still employed at Franklin Center for Rehabilitation & Nursing.

**INTERROGATORY NO. 9:**

Please state the name(s) of any nutritionist or registered dietician at Defendants' nursing facility who rendered care or treatment to Plaintiff during his residency. Please state if such nutritionist is still employed.

**ANSWER:**

Martha Calle (Chief Clinical Dietitian) and Dolores Morano, Dietitian, are both still employed at Franklin Center for Rehabilitation.

**INTERROGATORY NO. 10:**

Please state the name(s) of any physical therapist at Defendants' nursing facility who rendered care or treatment to Plaintiff during his residency. Please state if such person is still employed.

**ANSWER:**

Dr. Martha Mays and Ricardo Suarez are the physical therapists who rendered care to Plaintiff. They are broth still employed at Franklin Center for Rehabilitation & Nursing.

**INTERROGATORY NO. 11:**

State the full name of all persons who were primarily responsible for marketing Defendants' nursing facility, including recruiting new patients into the facility, or increasing patient census at said facility during the time of Plaintiff's residency.

**ANSWER:**

Sharon Benderly is the primary person responsible for marketing, recruiting new patients, and increasing census.

**INTERROGATORY NO. 12:**

For each day and shift during Plaintiff's residency at Defendants' nursing facility, state the number of nurses, nurse's aides, or physician's assistants and/or orderlies who actually worked on the unit of the nursing facility where Plaintiff resided at said facility.

**ANSWER:**

See Attached ("B")

**INTERROGATORY NO. 13:**

Identify by listing the name, address, telephone number, license number, and dates that any outside consultant or any member of a quality assurance team was brought into said Defendants' nursing facility to evaluate the adequacy of patient care, make recommendations regarding patient care or correct any nursing care problem at any time during Plaintiff's residency.

**ANSWER:**

There were no outside consultants or any member of a quality assurance team brought into Defendants' facility to evaluate the adequacy of patient care, make recommendations regarding patient care or correct any nursing care problem at any time during Plaintiff's residency.

**INTERROGATORY NO. 14:**

Please state if any violations, citations or penalties were issued to or assessed against Defendants' nursing facility by any local, state or federal governmental authority for inadequate care or treatment to residents at Defendants' facility during the residency of Plaintiff. If so, provide details as to the nature of each such violation, citation or penalty and the outcome of any proceeding related thereto.

**ANSWER:**

There are no violations, citations or penalties assessed against Defendants' facility during the applicable time period. Attached hereto is a copy of the Nursing Home Survey Profile Summary for the applicable time period. (See "C")

**INTERROGATORY NO. 15:**

Please state if you notified or consulted with any outside physician regarding the care and treatment of Plaintiff for a) pressure wounds, or b) mental health issues during the period of time Plaintiff was a resident of Defendants' nursing facility. If said notification is not specifically documented in the medical records for Plaintiff, identify each such notification by stating the date, time, person who made the communication, the physician who received it, and the substance of such communication.

**ANSWER:**

No outside physician was notified or consulted regarding the care and treatment of Plaintiff for pressure wounds or mental health issues during the period of time Plaintiff was a resident of Defendants' nursing facility. Aron Pinkhasov, M.D., Timothy Segal, M.D. and Margaret Stainao, Ph.D. are all on the NEW FRANKLIN payroll.

**INTERROGATORY NO. 16:**

State the style, case number and location of filing of every lawsuit brought against Defendants within the last three years involving any allegation of negligent or abuse of residents by any facility owned or operated by NEW FRANKLIN REHABILITATION & HEALTH CARE FACIALITY, LLC, FRANKLING CENTER FOR REHABILITATION& NURSING, INC., and ISRAEL SHERMAN, and/or managed by them. This includes, but is not limited to lawsuits alleging that Defendants provided substandard care to residents.

**ANSWER:**

There are no lawsuits brought against Defendants.

**INTERROGATORY NO. 17:**

Please state the name of any insurance carrier and the amount of available insurance coverage provided to Defendants' for the allegations made in this lawsuit. Also, state the number of claims and the amount of erosion as to each and every insurance policy that is applicable to: a) any claim made in this lawsuit; and b) the entirety of Plaintiff's residency at Defendants' nursing facility.

**ANSWER:**

See Attached ("D")

**INTERROGATORY NO. 18:**

If you contend that while physically present at Defendants' nursing facility Plaintiff was cared for by any employee or consultant of Defendants who is not identified in his medical chart please identify that person by listing the name, last known address, last known telephone number, social security number and every day and shift which that person provided care.

**ANSWER:**

Only employees mentioned in chart rendered care to Plaintiff.

**INTERROGATORY NO. 19:**

Please identify the individual at Defendants' nursing facility who was responsible for retention, storage, and maintenance of medical records of residents during Plaintiff's residency at the nursing facility. Please also identify the individual at Defendants'

nursing facility who is responsible for retention, storage and maintenance of medical records and photographs of residents since October 24, 2006, to present.

**ANSWER:**

Jennifer Saade, Director of Medical Records is responsible for retention, storing and maintenance of medical records.

**INTERROGATORY NO. 20:**

Please identify all individuals who participated in responding to these interrogatories. If any such individual is no longer employed by you, please state the date such employment terminated and the name, last known address and telephone number of this individual.

**ANSWER:**

William Duke, M.D., Medical Director

Dated:   New York, New York
         January 22, 2009

Yours, etc.,

**KOPFF, NARDELLI & DOPF LLP**

By: _____
Victor C. Piacentile (1539)
Attorneys for Defendants
NEW FRANKLIN REHABILITATION &
HEALTH CARE FACILITY, LLC,
FRANKLIN CENTER FOR
REHABILITATION & NURSING, INC.,
FRANKLIN CENTER FOR
440 Ninth Avenue – 15th Floor
New York, New York 10001
(212) 244-2999

TO:   LEAHEY & JOHNSON, P.C.
      **Attorneys for Plaintiff**
      120 Wall Street – Suite 2220
      New York, New York 10005
      (212) 269-7308

      MARTIN, CLEARWATER & BELL, LLP
      Attorneys for the Defendant
      **THE BROOKDALE HOSPITAL MEDICAL CENTER**
      220 East 42nd Street
      New York, New York 10017
      (212) 697-3122

      WAGNER, DOMAN & LETO, P.C.
      Attorneys for the Defendant
      **NEW YORK HOSPITAL MEDICAL CENTER OF QUEENS**
      227 Mineola Boulevard
      Mineola, New York 11501
      (516) 742-1444

      BELAIR & EVANS, LLP
      Attorneys for the Defendants
      **SANJEEV RAJPAL, M.D. and CLASS SURGERY BROOKLYN GROUP, P.C.**
      61 Broadway – Suite 1320
      New York, New York 10006
      (212) 344-3900

      WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
      Attorneys for the Defendants
      **THE MOUNT SINAI HOSPITAL, HOWARD CHOI, M.D., DANIELLE PERRET, M.D., and BRIAN RIORDAN, M.D.**
      150 east 42nd Street
      New York, New York 10017
      (212) 490-3000

      FUREY, FUREY, LEVERAGE, MANZIONE, WILLIAMS & DARLINGTON, P.C.
      Attorneys for the Defendant
      **HILLSIDE MANOR COMPREHENSIVE CARE CENTER**
      600 Front Street
      Hempstead, New York 11550-4494
      (516) 538-2500

vcp:emz

{A0298979.DOC}                                         15