UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

GEORGE W. BROWN,                    :

                    Plaintiff,      :

    -against-                       :      08 Civ. 1093 (LMM)(HBP)

THE BROOKDALE HOSPITAL MEDICAL      :      REPORT &
CENTER, THE NEW FRANKLIN                   RECOMMENDATION
REHABILITATION & HEALTH CARE        :
FACILITY LLC, FRANKLIN CENTER FOR
REHABILITATION & NURSING, INC.,     :
FRANKLIN CENTER FOR REHABILITATION
& NURSING, ISRAEL SHERMAN, WILLIAM  :
DUKE, M.D., and THE NEW YORK
HOSPITAL MEDICAL CENTER OF QUEENS,  :

                    Defendants.     :

----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE LAWRENCE M. McKENNA, United States

District Judge,

I.  Introduction

          Plaintiff seeks an Order pursuant to Rule 37(b)(2)(C)

of the Federal Rules of Civil Procedure striking the answer of

defendants the New Franklin Rehabilitation & Health Care Facility

LLC, Franklin Center for Rehabilitation & Nursing, Inc. and

Franklin Center for Rehabilitation & Nursing (collectively, the

"New Franklin Defendants") on the ground that they have failed to

comply with my discovery Orders and have failed to preserve
electronically stored information that is relevant to this case.
For the reasons set forth below, I respectfully recommend[1] that
plaintiff's motion for sanctions be granted but that the sanc-
tions be limited to (1) an instruction to the jury that it may
presume that the lost evidence was damaging to the New Franklin
Defendants' defense in this matter and (2) an award to plaintiff
of the reasonable attorney's fees incurred in making the current
motion and the litigation leading up to the motion.

## II.  Facts

This action was commenced on February 4, 2008 and is,
in pertinent part, an action to recover damages for alleged
violations of various provisions of the Social Security Act,
negligence and medical malpractice (Complaint ("Compl.") ¶ 1).
At all relevant times, plaintiff was a "near quadriplegic indi-
vidual" who was paralyzed from the chest down and had only
limited use of his hands (Compl. ¶ 2).  As a result of his
paralysis, plaintiff is "unable to sit, walk, stand, wash, turn
over, feed or dress himself[;] his bowels require[] mechanical

---

[1]Because plaintiff is seeking dispositive relief, his
application is appropriately addressed in a report and
recommendation.

assistance and daily enemas in order to be evacuated[;] he [can] neither bathe nor dress himself nor change his bed linens or clothing" (Compl. ¶ 2).

Plaintiff alleges that he was admitted to the Franklin Center for Rehabilitation and Nursing on December 8, 2005 and remained there as a patient until October 16, 2006 (Compl. ¶ 7). As a result of deficient care he received at the Franklin Center for Rehabilitation and Nursing, plaintiff alleges that he developed, among other things, Stage IV decubitus ulcers (Compl. ¶ 80).

The particular discovery requests that give rise to this motion are two document requests that plaintiff served in 2009. On August 12, 2009, plaintiff served his Supplemental Demand for Documents from Franklin Center for Rehabilitation & Nursing, William Duke, M.D. and Israel Sherman ("August 2009 Document Request")(Exhibit J to the Declaration of Christopher D. Clarke, Esq., dated February 8, 2010 ("Clarke Decl.")). In this document request, plaintiff sought a number of documents that had been described in the depositions of certain defendants or their employees. Specifically, plaintiff sought documents relating to defendant Duke and Juliet Chang, a registered nurse employed by the Franklin Center for Rehabilitation & Nursing, copies of meeting minutes or computer files concerning the attending

physicians committee, the nutrition committee and the quarterly assurance review committee at the Franklin Center for Rehabilitation & Nursing, mock survey reports,[2] morning reports and "24-Hour Nursing reports" received by Chang concerning plaintiff and policy or procedure guidelines concerning the turning and positioning of "difficult patients."  Each request cited to specific pages of deposition transcripts where the documents requested were described.  The New Franklin Defendants did not respond to this document request within the thirty days provided by Fed.R.Civ.P. 34.

Plaintiff served a second document request on New Franklin Rehabilitation & Health Care Facility, LLC, Franklin Center for Rehabilitation & Nursing, Inc., Israel Sherman and William Duke, M.D. on or about November 20, 2009 ("November 2009 Document Request") (Ex. K to Clarke Decl.).  Plaintiff sought eight categories of documents in this request, including Resource Utilization Groupings ("RUGs") prepared concerning plaintiffs. As explained by counsel at oral argument, RUGs are documents that a nursing home periodically submits to Medicaid in order to

---

[2]Based on the descriptions of counsel at oral argument, I understand mock survey reports to be prepared in connection with a medical institution's preparation for a visit by an accreditation entity.  Prior to the visit of an accreditation entity, an institution will perform a mock survey to identify and correct potential problems before the actual survey is performed.

obtain reimbursement and that describe the services a patient
needs and that are provided to the patient.  The New Franklin
Defendants also failed to timely respond to this discovery
request.

As a result of the New Franklin Defendants' failure to
respond in a timely manner to both of these document requests, I
held a tape-recorded discovery conference with counsel on Decem-
ber 21, 2009.  Despite the fact that the New Franklin Defendants'
failure to timely respond to the discovery requests would ordi-
narily result in a waiver of any objections they might otherwise
have, plaintiff's counsel agreed to extend their time to object
in return for a firm date for a response.  Counsel for the New
Franklin Defendants represented that his clients had not provided
documents to him and that he would visit the facility himself in
early January 2010 to resolve all open issues concerning plain-
tiff's document requests and obtain either all the requested
documents or a satisfactory explanation for their unavailability.
Accordingly, I entered an Order on December 21, 2009 directing
New Franklin Rehabilitation & Health Care Facility, LLC, Franklin
Center for Rehabilitation & Nursing, Inc. and Franklin Center for
Rehabilitation and Nursing to respond to all of plaintiff's
outstanding document requests no later than January 15, 2010; to
the extent that these defendants were not objecting to the

document requests, they were also to produce responsive documents on January 15, 2010.  Plaintiff did not press for an earlier date in order to permit counsel for the New Franklin Defendants to observe the end-of-year holidays.  At the conclusion of the call I also warned counsel for the New Franklin Defendants that an unjustified failure to comply with discovery requests and discovery orders can result in severe sanctions, including a default judgment, and directed his attention to the Court of Appeals' decision in <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849 (2d Cir. 1995).

The New Franklin Defendants served a response to the plaintiff's document requests on January 15, 2010.  Although plaintiff's two document requests contained in the aggregate eighteen different document requests, the New Franklin Defendants' response addressed only sixteen items (Ex. N to the Clarke Decl.), and a number of items were not produced at all.  According to plaintiff, the New Franklin Defendants failed to produce (1) physician committee or nutrition committee meeting minutes, (2) 24-hour nursing reports, (3) morning reports, (4) mock survey reports, (5) policies and procedures for turning an positioning difficult patients, (6) RUGs documents, (7) the identity of the RUGs coordinator, (8) CAN accountability records, (9) the daily per resident rate of payment/reimbursement, (10) the census data

used to calculate the daily per resident rate of
payment/reimbursement, (11) unredacted copies of the New York
State Department of Health Survey Reports including the Nursing
Assessment and Nursing Section of the survey report, (12) records
of plaintiff's requests for transfer and (13) the Patient Review
Instrument prepared in connection with plaintiff's requests for
transfer (Clarke Decl. ¶ 34).  With respect to the RUGs docu-
ments, the New Franklin Defendants represented that "As to RUGs:
in February 2009, the computer system at New Franklin Center
crashed, and all the material contained therein was lost" (Ex. N
to Clarke Decl. at 4).

        Plaintiff's counsel wrote to me on January 27, 2010,
citing the deficiencies in the New Franklin Defendants' document
production and seeking sanctions.  I held another conference call
with counsel on January 29, 2010 to discuss those deficiencies.
Counsel for the New Franklin Defendants stated that he had not
learned of plaintiff's letter until the night before the call,
and again represented that he would personally visit the New
Franklin Defendants' facility to secure the missing documents.  I
directed that counsel continue to confer to attempt to resolve
the issue amicably, but that if they were unable to reach such a
resolution within the following week, plaintiff should make a
formal motion for sanctions by February 8, 2010.  Counsel were

unable to resolve their differences, resulting in the instant
motion.

In the New Franklin Defendants' response to the motion,
they specifically identified where most of the allegedly missing
documents could be found in their document production.  With
respect to the documents that the New Franklin Defendants had not
produced, counsel claimed that they were either not in the
possession of the New Franklin Defendants or had been irretriev-
ably lost as a result of a computer malfunction.  As to the
computer malfunction, the New Franklin Defendants' counsel
represented:

> As was discussed in Defendants' response dated January
> 15, 2010, [the RUGs documents] were lost in a computer
> crash.  The hard drives in question were subsequently
> discarded.  Plaintiff has asserted that the hard drive
> failure was intentionally done, with the purpose of
> frustrating George Brown's discovery in this case.
> Attached hereto is an Affidavit from Herbert Olitsky,
> the individual who serviced and maintained the computer
> System for New Franklin.  In that Affidavit Mr. Olitsky
> explains that the computer system at New Franklin was 7
> years old at the time of the system failure and that he
> has encountered this problem many times.  Attached
> hereto is the affidavit of Gabriel Sebbag, the current
> Administrator at New Franklin.  He explains that as a
> result of the system failure the records of more than a
> thousand patients were lost, and that as a result of
> the loss of this documentation New Franklin was unable
> to bill Medicare for a period of time.  It seems absurd
> that New Franklin would intentionally inflict such
> extensive damage on itself in an effort to frustrate
> George Brown's litigation.  In fact, George Brown's
> records were among the more than one thousand patient
> records lost in this system failure.  There is abso

lutely no evidence that the system failure was intended
to deprive George Brown of his discovery rights.

(Affirmation of Victor C. Piacentile, Esq., dated March 19, 2010

("Piacentile Aff."), at ¶ 19).  In an accompanying affidavit,

Herbert Olitsky,[3] the New Franklin Defendants' computer consul-

tant, stated that his company was advised by the New Franklin

Defendants on December 22, 2008 that they were experiencing a

server problem.  Olitsky further stated that one of his employees

visited the New Franklin Defendants' facility and found that hard

drives had crashed, were unreadable and that there was no valid

backup (Olitsky Aff. ¶¶ 3-4).  The drives were subsequently sent

to Kroll Ontrack to determine if data could be recovered (Olitsky

Aff. ¶ 5), and Kroll reported by letter dated February 5, 2010:

> On 1/17/2009, we received 2 ST 336753LW drives for data
> recovery.
>
> We completed an evaluation on the drives and found them
> both to be unrecoverable.  One drive (3hx0e8sw) was
> completely zeroed out.  The other (3hx0dtvx) had inter-
> nal mechanical failure and severe media damage.  The
> platter surfaces were extensively damaged, preventing
> access to any data.

---

[3]Both Oliltsky and Gabriel Sebbag state their affidavits are
based "on facts and information both known to [them], and on
information and belief" (Affidavit of Herbert Olitsky, sworn to
March 18, 2010 ("Olitsky Aff."), ¶ 2; Affidavit of Gabriel
Sebbag, sworn to March 18, 2010 ("Sebbag Aff."), ¶ 2, both
annexed as undesignated exhibits to the Piacentile Aff.) .  It is
unclear which portions, if any, of these affidavits are based on
personal knowledge.

(Letter from Barb Vogl addressed to Franklin Center for Rehab and Nursing, dated February 5, 2010, annexed as an undesignated exhibit to the Olitsky Aff.).  Olitsky, who claims to have 30 years experiences in computer maintenance and installation, opined that the simultaneous crash of both disk drives was accidental (Olitsky Aff. ¶¶ 7-12).

The New Franklin Defendants claimed that the hard drive crash resulted in the loss of all historical and then-current data for thousands of its then-current residents.  Further, the loss of the data allegedly prevented the New Franklin defendants from billing Medicare (Sebbag Aff. ¶ 5).  The New Franklin Defendants further represented that the hard drives were dis-carded in early July 2009 because New Franklin updated its computer system (Sebbag Aff. ¶ 7).

Oral argument on plaintiff's motion was held on April 12, 2010,[4] and during the argument several material facts were disclosed.  Plaintiff admitted that most of the missing documents were ultimately provided.  However, plaintiff contended that the following six categories of documents remained missing:  (1) morning reports prepared by nurses, (2) the documents on which

---

[4]The argument was recorded although a transcript of the argument has not been prepared.  The descriptions in the text of the statements made at the argument are based on both my recollection of the argument and my review of the recording.

the daily rate of reimbursement was calculated, (3) cost reports, (4) syllabi for in-service training programs provided to the nurses, (5) mock survey reports and (6) RUGs documents.  The New Franklin Defendants argued that the missing documents were either not in their possession or lost as the result of a computer malfunction.  Although the New Franklin Defendants' counsel stated that he "believe[d]" he instructed his clients concerning their obligation to preserve documentary evidence, he admitted that no written litigation hold was put in place.  The New Franklin Defendants' counsel further stated that a new adminis-trator was hired while the litigation was pending and that the instruction concerning the New Franklin Defendants' obligation to preserve documentary evidence may have gotten lost in the change of personnel.  In addition, although counsel for the New Franklin Defendants repeatedly claimed that the crash of the hard drives was detrimental to the New Franklin Defendants because it im-paired their ability to obtain reimbursement from Medicaid, he was unable to state whether the New Franklin Defendants actually suffered a financial loss as a result of the incident.  Counsel further re-affirmed that the New Franklin Defendants did not have cost reports, syllabi for in-service training programs or mock survey reports.  At the conclusion of the argument, I reserved decision and instructed counsel for the New Franklin Defendants

to provide documentation concerning the replacement of the hard drives that had crashed.

By letter dated April 26, 2010, counsel for the New Franklin defendants submitted a copy of the invoice for the complete replacement of the nursing home's billing system.  The invoice is dated September 5, 2009, recites that the terms of sale are "C.O.D." and bills for a total of $146,052.30.  In the same letter, the New Franklin Defendants reported that they had found and produced mock survey reports, Medicaid rate sheets and cost reports.  No explanation was provided as to why these documents were not provided earlier.

III.  <u>Analysis</u>

Largely as a result of plaintiff's motion, it appears that most of the documents plaintiff sought have now been produced.  Admittedly, the New Franklin Defendants should have produced those documents long, long ago, and plaintiff should not have had to go through arduous motion practice to obtain those documents.  With respect to the documents that defendants produced late, awarding plaintiff the attorney's fees he incurred in his efforts to obtain the documents sought in the August 2009 Document Request and the November 2009 Document Request is an adequate sanction.  The severe sanction sought of striking the

New Franklin Defendants' answer would be out of proportion to the misconduct, i.e., the late production of documents, and would conflict with the strong preference in this Circuit for resolving litigation on the merits.  See New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005); Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 62 (2d Cir. 1996).

The principal exception to the foregoing are the RUGs documents which have not been produced and now cannot be produced because the hard drives on which they were stored allegedly crashed and have been discarded.  What sanction, if any, should be imposed as a result of the loss of these documents is, I submit, best analyzed in accordance with the growing body of case law addressing the spoliation of electronically stored information.

Spoliation is "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"  Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001), quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999); accord Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) (Scheindlin, D.J.) ("Spoliation refers to the destruction or material alteration of evidence or to the failure

13

to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."); Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 288 (S.D.N.Y. 2009) (Francis, M.J.).  Unlike a sanction imposed pursuant to Fed.R.Civ.P. 37(b) which requires the violation of a court order, Salahuddin v. Harris, 782 F.2d 1127, 1131-32 (2d Cir. 1986), a court can impose a sanction for spoliation pursuant to its "inherent power to manage its own affairs" whether or not the destruction of evidence violates a court order.  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002); Richard Green (Fine Paintings) v. McClendon, supra, 262 F.R.D. at 288; see West v. Goodyear Tire & Rubber Co., supra, 167 F.3d at 779; Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., supra, 685 F. Supp. 2d at 465;.

        "'The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis.'"  Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., supra, 685 F. Supp. 2d at 469, quoting Fujitsu Ltd v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001).  Generally, a litigation-ending sanction, such as that sought here, is appropriate only where evidence has been deliberately destroyed with the intention of depriving the adversary of its use.  Pension

Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,
supra, 685 F. Supp. 2d at 469-70; see West v. Goodyear Tire &
Rubber Co., supra, 167 F.3d at 779 ("Because dismissal is a
drastic remedy, it should be imposed only in extreme circum-
stances, usually after consideration of alternative, less drastic
sanctions." (inner quotation marks and citation omitted)).  "As a
general matter, however, the severity of the sanctions imposed
should be congruent with the destroyer's degree of culpability."
Richard Green (Fine Paintings) v. McClendon, supra, 262 F.R.D. at
288 (collecting cases).  Any  sanction imposed should be tailored
to meet the rationales underlying the spoliation doctrine, namely
deterrence, shifting the risk of an erroneous determination to
the party who created the risk and restoration of the aggrieved
party to the position in which he should have been.  West v.
Goodyear Tire & Rubber Co., supra, 167 F.3d at 779; accord
Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.
Sec., supra, 685 F. Supp. 2d at 469; see Richard Green (Fine
Paintings) v. McClendon, supra, 262 F.R.D. at 289.

   In order to justify the imposition of a sanction for
spoliation, the aggrieved party must prove three things:

> that the spoliating party (1) had control over the
> evidence and an obligation to preserve it at the time
> of destruction or loss; (2) acted with a culpable state
> of mind upon destroying or losing the evidence; and

that (3) the missing evidence is relevant to the inno-
cent party's claim or defense.

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.
Sec., supra, 685 F. Supp. 2d at 467, citing Residential Funding
Corp. v. DeGeorge Fin. Corp., supra, 306 F.3d at 107; accord
Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 430
(S.D.N.Y. 2009) (Katz, M.J.); Richard Green (Fine Paintings) v.
McClendon, supra, 262 F.R.D. at 289.

There is no dispute here that the New Franklin Defen-
dants had control over the evidence; the lost documents resided
on the New Franklin Defendants' hard drives.  Nor can there be
any serious question that the New Franklin Defendants were under
an obligation to preserve the documents at the time of their
loss.  This action was commenced on February 4, 2008. According
to the New Franklin Defendants the hard drives malfunctioned in
December 2009 and were discarded in June 2009.  Clearly after
February 4, 2008 -- the date on which the action was commenced --
the New Franklin Defendants had an obligation to preserve all
documents that related to plaintiff's care.  "The obligation to
preserve evidence arises when the party has notice that the
evidence is relevant to litigation or when a party should have
known that the evidence may be relevant to future litigation."
Fujitsu Ltd v. Fed. Express Corp., supra, 247 F.3d at 436, citing

16

Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998);

Richard Green (Fine Paintings) v. McClendon, supra, 262 F.R.D. at

289; Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72

(S.D.N.Y. 1991) (Francis, M.J.) (A litigant "is under a duty to

preserve what it knows, or reasonably should know, is relevant in

the action, is reasonably calculated to lead to the discovery of

admissible evidence, is reasonably likely to be requested during

discovery and/or is the subject of a pending discovery

request."). As of the date the hard drives malfunctioned, the

New Franklin Defendants had had actual notice for approximately

eleven months that plaintiff had asserted claims concerning the

quality and sufficiency of the care he received. They were,

therefore, under a duty to preserve all documentary evidence

concerning that care, including billing records, such as the

RUGs, which reflected the care plaintiff received (or at least

the care the New Franklin Defendants represented to Medicaid that

plaintiff needed). At the very least, the New Franklin Defen-

dants should have printed out or copied to electronic media the

data on the hard drives that related to plaintiff. One would

think that collection of this electronically stored information

would have been part of the standard response to the receipt of

plaintiff's complaint.

Second, there can be little debate that the New Franklin Defendants acted with a sufficiently culpable state of mind. Counsel for the New Franklin Defendants candidly admitted at oral argument that no written document preservation order was issued after the action was commenced. As of 2008, the failure to issue a written document preservation order after the commencement of litigation constitutes gross negligence. "Possibly after October, 2003, when [the fourth discovery decision in <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212 (S.D.N.Y. 2003)], and definitely after July, 2004, when the final relevant Zubulake opinion was issued, [<u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 422 (S.D.N.Y. 2004)], the failure to issue a <u>written</u> litigation hold constitutes gross negligence because that failure is likely to result in the destruction of relevant information." <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.</u>, <u>supra</u>, 685 F. Supp. 2d at 464-65, <u>citing</u>, inter <u>alia</u>, <u>Treppel v. Biovail</u>, 249 F.R.D. 111, 121 (S.D.N.Y. 2008) (Francis, M.J.) (failure to preserve backup tapes after December 2003 constitutes gross negligence or recklessness) <u>and In re NTL, Inc. Sec. Litig.</u>, 244 F.R.D. 179, 198-99 (S.D.N.Y. 2007) (Peck, M.J.) ("The Court finds that [the] utter failure to preserve documents and [electronically stored information] relevant to plaintiff's allegations in this case . . . to be at least grossly negligent."); <u>see also</u>

<u>Toussie v. County of Suffolk</u>, 01 CV 6716, 2007 WL 4565160 at *8 (E.D.N.Y. Dec. 21, 2007) ("The law is very clear that the failure to implement a litigation hold at the outset of litigation amounts to gross negligence."); <u>Chan v. Triple 8 Palace, Inc.</u>, 03 Civ. 6048 (GEL)(JCF), 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005) (Francis, M.J.)("[T]he utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent.").  Gross negligence, or even negligence, is a sufficiently culpable state of mind to warrant the imposition of sanctions. <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002).[5]

---

[5]Although I need not reach the issue, there are very serious questions concerning the possible intentional destruction of the data on the hard drives.  According to the New Franklin Defendants, one of the hard drives was "zeroed out" which means that every data storage unit on the hard drive had been over-written with zeroes.  At least one court has found such a destruction of data to be the product of intentional conduct. <u>Clarity Servs., Inc. v. Barney</u>, 8:08-cv-2278-T-23 TBM, 2010 WL 1140865 at *4, *6 (M.D. Fla. Feb. 26, 2010).

Second, despite repeated statements by the New Franklin Defendants that the hard drives and the data recorded thereon were vital to the New Franklin Defendants' operations and that loss of the data may have prevented the New Franklin Defendants from billing Medicaid, the hard drives were not replaced until September 2009 -- approximately nine months after they crashed (Undesignated Attachment to the Letter of Victor Piacentile, Esq., to the undersigned, dated April 26, 2010).  I take judicial notice that most hard drives sell at retail for well under $1,000.  Given the modest cost of a hard drive, it is difficult to understand why the New Franklin Defendants waited

(continued...)

The third and final element that plaintiff must establish to sustain an award of sanctions is the relevance of the lost evidence.  Relevance for the purposes of the imposition of a spoliation sanction requires more than merely probative information.

> [O]ur cases make clear that "relevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that "the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." Kronisch, 150 F.3d at 127; Byrnie, 243 F.3d at 110. Courts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction." Kronisch, 150 F.3d at 128; Byrnie, 243 F.3d at 110.

Residential Funding Corp. v. DeGeorge Fin. Corp., supra, 306 F.3d at 108-09; accord Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., supra, 685 F. Supp. 2d at 467 ("The innocent

---

[5](...continued)
approximately nine months to replace this putatively vital link in their billing system.

Although there are serious questions concerning the hard drives' failure, plaintiff has not offered any competent evidence that would sustain a finding of intentional destruction of evidence.  Accordingly, there is not sufficient evidence to sustain a finding of intentional conduct that might support the entry of a default judgment.

party must . . . show that the evidence would have been helpful
in proving its claims or defenses -- i.e., that the innocent
party is prejudiced without the evidence.").  Although the
destruction of evidence through gross negligence may be suffi-
cient by itself to give rise to a presumption of relevance and
prejudice to the innocent party, Pension Comm. of Univ. of
Montreal Pension Plan v. Banc of Am. Sec., supra, 685 F. Supp. 2d
at 467, the circumstances here are sufficient to independently
sustain an inference of prejudice.  The RUGs records were submit-
ted to Medicaid to obtain reimbursement for plaintiff's care.
The New Franklin Defendants did, therefore, have incentive to
maximize their descriptions of plaintiff's needs and thereby
maximize their reimbursement.  If there were inconsistencies
between the New Franklin Defendants' representations to Medicaid
concerning the care plaintiff needed and the care plaintiff
actually received as reflected in plaintiff's medical records,
not only would the New Franklin Defendants' credibility be
impeached, they would also be cast in a very negative light,
namely, as health care providers who fraudulently profit on the
needs of the sick.  Because the RUGs documents are lost, it is
impossible to know with certainty whether there was any dishon-
esty in RUGs documents.  There is however some reason to suspect

that they be more than cumulative evidence of plaintiff's medical
records.

Since the record establishes all three elements to
justify an award of sanctions, I conclude that, in addition to
the costs of the instant motion and the litigation leading up to
the motion, plaintiff is entitled to a jury instruction that they
may presume that the RUGs documents would have been helpful to
plaintiff's case.  Specifically I conclude that they are entitled
to the following adverse inference charge:

> Plaintiff has argued that the New Franklin Defen-
> dants destroyed relevant evidence, or failed to prevent
> the destruction of relevant evidence.  This is known as
> the "spoliation of evidence."
>
> Spoliation is the destruction of evidence or the
> failure to preserve property for another's use as
> evidence in pending or reasonably foreseeable litiga-
> tion.  To demonstrate that spoliation occurred, the
> plaintiff bears the burden of proving the following two
> elements by a preponderance of the evidence:
>
> > First, that relevant evidence was destroyed
> > after the duty to preserve arose.  Evidence is
> > relevant if it would have clarified a fact at
> > issue in the trial and otherwise would naturally
> > have been introduced into evidence; and
> >
> > Second, that if relevant evidence was de-
> > stroyed after the duty to preserve arose, the
> > evidence lost would have been favorable to plain-
> > tiff.
>
> I instruct you, as a matter of law, that the New
> Franklin Defendants failed to preserve evidence after
> their duty to preserve arose.  This failure resulted
> from their gross negligence in performing their discov

ery obligations.  As a result, you may presume, if you so choose, that such lost evidence was relevant, and that it would have been favorable to plaintiff.  In deciding whether to adopt this presumption, you may take into account the egregiousness of the New Franklin Defendants' conduct in failing to preserve the evidence.

However, the New Franklin Defendants have offered evidence that (1) no evidence was lost; (2) if evidence was lost, it was not relevant; and (3) if evidence was lost and it was relevant, it would not have been favorable to plaintiff.

If you decline to presume that the lost evidence was relevant or would have been favorable to plaintiff, then your consideration of the lost evidence is at an end, and you will not draw any inference arising from the lost evidence.

However, if you decide to presume that the lost evidence was relevant and would have been favorable to plaintiff, you must next decide whether any of the New Franklin Defendants has rebutted that presumption.  If you determine that one or all of the New Franklin Defendants has rebutted the presumption that the lost evidence was either relevant or favorable to plaintiff, you will not draw any inference arising from the lost evidence against that defendant.  If, on the other hand, you determine that a New Franklin Defendant has not rebutted the presumption that the lost evidence was both relevant and favorable to plaintiff, you may draw an inference against that defendant and in favor of the plaintiff -- namely that the lost evidence would have been favorable to plaintiff.

Each of the New Franklin Defendants is entitled to your separate consideration.  The question as to whether plaintiff has proven spoliation is personal to each of the New Franklin Defendants and must be decided by you as to each of the New Franklin Defendants individually.

Adapted from <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.</u>, <u>supra</u>, 685 F. Supp. 2d at 496-97.

The New Franklin Defendants argue that the imposition of any sanction is inappropriate because the loss of the electronically stored information on the hard drives falls within the terms of Fed.R.Civ.P. 37(e) which provides:  "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."  This argument is without merit. First, the obligation to preserve evidence requires affirmative intervention to prevent the destruction of evidence through routine processes.  Second, the loss of the information here was not due to a routine process.  As explained in <u>Doe v. Norwalk Community College</u> 248 F.R.D. 372, 378 (D. Conn. 2007):

> With respect to the destruction of electronic data, the defendants cite to newly-promulgated Rule 37([e]) of the Federal Rules of Civil Procedure, which states:  "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."  Fed.R.Civ.P. 37([e]).  However, the Commentary to that Rule indicates that, "[w]hen a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a 'litigation hold.'"  <u>Id.</u> at Advisory Committee Notes to 2006 Amendment.  Thus, in order to take advan

24

tage of the good faith exception, a party needs to act affirmatively to prevent the system from destroying or altering information, even if such destruction would occur in the regular course of business.  Because the defendants failed to suspend it at any time, . . . the court finds that the defendants cannot take advantage of Rule 37([e])'s good faith exception.

In addition, as the Commentary to Rule 37([e]) indicates, the Rule only applies to information lost "due to the 'routine operation of an electronic infor-mation system' -- the ways in which such systems are generally designed, programmed, and implemented to meet the party's technical and business needs."   See Fed.R.Civ.P. 37([e]) at Advisory Committee Notes to 2006 Amendment.  This Rule therefore appears to require a routine system in order to take advantage of the good faith exception, and the court cannot find that the defendants had such a system in place.

Finally, I respectfully submit that the harsh sanction of striking the New Franklin Defendants' answer is unwarranted here.  As discussed in note 5 above, although there are serious questions as to the truth of the New Franklin Defendants' claims concerning the crash of the hard drives, plaintiff has offered no evidence establishing intentional misconduct by the New Franklin Defendants.  In the absence of such evidence, I conclude that a litigation-ending sanction is not appropriate.  See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)(suggesting that dispositive sanctions require showing of willfulness or bad faith on part of offending party).

IV.   Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that plaintiff's motion be granted to the extent
that (1) an instruction be given to the jury that it may presume
that the lost evidence was damaging to the New Franklin Defen-
dants' defense in this matter and (2) plaintiff be awarded the
reasonable attorney's fees he incurred in making this motion and
in the litigation leading up to the motion.  I further recommend
that the motion be denied to the extent that it seeks more severe
sanctions.

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from the date of this Report and Recommenda-
tion to file written objections.  See also Fed. R. Civ. P. 6(a).
Such objections (and responses thereto) shall be filed with the
Clerk of the Court, with courtesy copies delivered to the cham-
bers of the Honorable Lawrence M. McKenna, United States District
Judge, Room 1640, 500 Pearl Street, New York, New York 10007 and
to the chambers of the undersigned, Room 750, 500 Pearl Street,
New York, New York 10007.  Any requests for an extension of time

26

for filing objections must be directed to Judge McKenna.   FAILURE

TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF

OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.   Thomas v. Arn,

474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34,

38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d

1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300

(2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d

Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 & n.2 (2d Cir.

1983).

Dated:  New York, New York
        July 19, 2010

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Christopher D. Clarke, Esq.
Leahy & Johnson, P.C.
120 Wall Street
New York, New York  10005

Victor C. Piacentile, Esq.
Kopff, Nardelli & Dopf, LLP
440 Ninth Avenue
New York, New York  10001-1688

Robert M. Drucker, Esq.
Martin Clearwater & Bell LLP
220 East 42nd Street
New York, New York  10017

Marshall J. Shepardson, Esq.
Belair & Evans, LLP
61 Broadway
New York, New York   10006

Danielle Zeiogler, Esq.
Wilson Elser Moskowitz
    Edelman & Dicker LLP
150 East 42nd Street
New York, New York   10017

William T. Collins, III, Esq.
Furey ,Furey, Leverage, Manzione,
    Williams & Darlington,P.C.
600 Front Street
Hempstead, New York   11550

Diana DiLeo, Esq.
Wagner, Doman & Leto, P.C
227 Mineola Boulevard
Mineola, New York   11501